UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODEXIS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ENZYMEWORKS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 3:16-cv-00826-WHO<br><br>**ORDER ON MOTIONS**<br>Re: Dkt. Nos. 117, 128, 134, 137, 143 |

## INTRODUCTION

Codexis, Inc. ("Codexis") accuses defendants EnzymeWorks, Inc. (U.S.), EnzymeWorks, Inc. (China) a/k/a Suzhou Hanmei Biotechnology Co. Ltd d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks"), and Junhua Tao, founder and chief executive officer of EnymeWorks, of patent infringement, trade secret misappropriation, and various business torts, related to Codexis's unique plasmids and engineered enzymes. I previously granted leave for Codexis to add claims for violation of California's Uniform Voidable Transfer Act and common law fraudulent transfer against Tao and his son.

Over the past couple of months, the parties have filed several motions that I consolidated for hearing on November 29, 2017. This order addresses those motions.

**I.　　MOTION TO STRIKE STREM DEPOSITION AND REQUEST FOR SANCTIONS**

　　**A.　　Background**

　　　　**1.　　Allegations**

Codexis accuses EnzymeWorks of patent infringement and trade secret misappropriation, as well as various state law claims. Second Am. Compl. ("SAC")(Dkt. No. 129). To minimize the issues for trial, the parties stipulated that Codexis's patents-in-suit are valid and infringed by

EnzymeWorks. Dkt. No. 102. Relevant to the trade secret misappropriation claim, it is undisputed that EnzymeWorks purchased Codexis's enzymes through its distributor, Strem. Tao Decl. ¶¶ 2–3 (Dkt. No. 117-2). EnzymeWorks then reverse engineered the enzymes. Tao Decl. ¶ 5. Codexis claims that the packaging contained certain "Terms and Conditions" prohibiting such reverse engineering. SAC ¶¶ 50–51. A third party, Dr. Chun Luo with Accelagen, Inc., placed the order for EnzymeWorks, received the shipment and opened the box to confirm the items against the sales order. TA Decl. ¶ 20, Exs. J, K (Dkt. No. 117-1). Dr. Luo testified that he did not recall seeing any terms and conditions in the box. Luo Dep. at 114:9–13 (Dkt. No. 117-1 at 45); Luo Dep. at 121:14–122:1 (Gross Decl., Ex. 3, Dkt. No. 123-3). The person at EnzymeWorks who opened the box said that "there was no T&C either inside or outside the enzyme kit boxes." Tao Decl. ¶4.

Codexis requested documents from Strem through an "informal" request. Gross Decl. ¶¶ 3–4 (Dkt. No. 123). Strem provided approximately 20 pages of business records related to its relationship with Codexis, including sales orders, terms and conditions, and packaging instructions requiring Strem to include Codexis's terms and conditions with the enzyme kits. Gross Decl ¶ 5, Ex. 1 (Dkt. No. 123-1). On May 22, 2017, Codexis produced these documents to EnzymeWorks. *Id*. Codexis's counsel proceeded to confer with Strem's counsel to schedule a deposition of Strem's Operations and Logistics Manager. Email Exchange between Strem's counsel and Codexis (*Id*., Ex. 4, Dkt. No. 123-4).

### 2. Strem Deposition

James Li, lead counsel for EnzymeWorks, was on vacation from July 24 to August 7, 2017. On August 8, 2017, he sent Codexis's counsel a summary of the scheduled depositions. TA Decl. ¶ 5; *id*., Ex. B (Dkt. No. 117-1). Later on August 8, 2017, Codexis's counsel Gabriel Gross emailed Strem's attorney the subpoena for deposition of Strem, and copied EnzymeWorks' two senior counsel, including Mr. Li. TA Decl. ¶6; *id*., Ex. C. The email requested Strem's counsel to "[k]indly confirm by reply email that your law firm will accept service on behalf of Strem by this email." *Id*. Approximately 13 minutes later, Mr. Li replied-all to the email asking "Counsel" to confirm that the deposition was scheduled for August 18. TA Decl. ¶ 19; *id*. Ex. D. No one

replied to Li's email.[1] Strem's counsel replied only to Mr. Gross confirming that his firm would accept service of the subpoena. Gross Decl., Ex. 7.

On August 17, 2017, Mr. Li sent Codexis's counsel an email regarding production of an agreement between Strem and Codexis, and referencing the "pending depositions[.]" Gross Decl. ¶ 24, Ex. 14 (Dkt. No. 123-14). That evening, the parties proceeded with the video deposition of EnzymeWorks' representative and Dr. Tao's wife, Jane Gao. Gross Decl. ¶ 10; Wang Decl. ¶ 3. It began at 8:00 p.m. pacific time and continued until approximately 1:00 in the morning. Wang Decl. ¶ 5.

On August 18, 2017, Codexis's counsel and Strem's counsel arrived at Strem's Massachusetts office shortly before 9:00 a.m. eastern time for Strem's representative's deposition. Gross Decl. ¶ 33. When no attorney for EnzymeWorks arrived, Mr. Gross emailed defense counsel advising them that the deposition was about to begin, and inquiring whether someone planned to attend. Gross Decl. ¶¶ 34–35; *id*., Ex. 21. Codexis's counsel proceeded with the deposition at 9:16 a.m., and noted for the record that defense counsel was not present. Gross Decl. ¶¶ 36–37; *id*., Ex. 22. The deposition concluded at 10:31 a.m. eastern time. *Id*.

Beginning at 8:20 a.m. Pacific Standard time, Mr. Li and Mr. Abdollahi began a series of email communications directed at Codexis's counsel accusing them of "conscious deception" and blaming them for defense counsel's failure to attend the Strem deposition. *Id*., Ex. 24.

### 3. Follow-Up

On August 22, 2017, Codexis proposed a second deposition of Strem's representative to eliminate any potential prejudice arising from defendants' absence from the first deposition. Gross Decl. ¶ 4; *id*., Ex. 26. The offer stated that the second deposition would be "at [defendants'] expense (including paying Codexis's and Strem's costs and fees...)[.]" *Id*. Defense counsel did

---

[1] Codexis's counsel states that this email was one of "a series of odd messages Codexis's counsel has received from Mr. Li that ignored the facts and history of the case or asked questions for which the answers were already in his possession." Opp'n at 5; *see* Gross Decl. ¶¶ 21–23. It therefore appeared to Codexis's counsel that this "one-line 'reply-all' email asking for confirmation of a date that had been sent to him fifteen minutes earlier was another peculiar, reflexive email that did not appear to require any response." Opp'n at 6.

3

not respond. Gross Decl. ¶ 41.

**B. Discussion**

Defendants move to strike the Strem deposition because "Codexis did not serve the subpoena, failed to provide proper notice, failed to either meet and confer or confirm its scheduling and concealed its undertaking by, *inter alia*, taking a near simultaneous video deposition of a witness (Jane Gao of EnzymeWorks) in China."[2] Mot. at 1. They insist that this conduct violated Local Rule 30-1[3] and the Northern District Guidelines for Professional Conduct.[4] *Id*. Specifically, they argue that Codexis's counsel failed to copy LiLaw's administrative staff on the email serving the subpoena for the third-party Strem deposition and failed to respond when LiLaw's senior attorney replied all to the email seeking confirmation that the deposition would proceed as scheduled.[5] *Id*. at 5–7. Codexis argues that defendants waived their right to challenge

---

[2] Defendants also argue that "[t]he subpoena attached to Mr. Gross's August 8, 2017 casual email did not include an executed proof of service." Mot. at 10. But the parties had stipulated in writing to accept service by email, Dkt. No. 33, so no proof of service was required. *See* Fed. R. Civ. P. 5(b)(2)(E)("A paper is served under this rule by … sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served[.]").

[3] Local Rule 30-1 states,
> For the convenience of witnesses, counsel and parties, before noticing a deposition of a party or witness affiliated with a party, the noticing party must confer about the scheduling of the deposition with opposing counsel or, if the party is pro se, the party. A party noticing a deposition of a witness who is not a party or affiliated with a party must also meet and confer about scheduling, but may do so after serving the nonparty witness with a subpoena.

Civil L. R. 30-1.

[4] Defendants cite three sections of the guidelines. Section 3(a) provides, "[a] lawyer should make reasonable efforts to schedule … discovery by agreement whenever possible and should consider the scheduling interests of opposing counsel, the parties, witnesses, and the court. Misunderstandings should be avoided by sending formal notice after agreement is reached." Section 5 states, "[t]he timing and manner of service of papers should not be calculated to disadvantage … the party receiving the papers." And section 8 directs that "[a] lawyer should at all times be civil, courteous, and accurate in communicating with opponents or adversaries, whether in writing or orally."

[5] Defendants offer several other reasons, which barely justify a response. First, they emphasize that Codexis's counsel Gross attended a meet and confer at LiLaw's offices and "did not even hint that the Strem deposition was going forward." Mot. at 5. But, according to Codexis's counsel, the meet and confer was "about a different issue entirely," Opp'n at 16, and they "had no reason to separately ask [d]efendants if they would object to or raise any problems with a properly noticed

4

its use of the deposition, and they had reasonable notice of the deposition, so there is no basis to strike the testimony or award sanctions.

### 1. Defendants Waived Their Right to Challenge

Codexis points to Rule 32 to insist that defendants have waived their right to challenge Codexis's use of the Strem deposition. Federal Rule of Civil Procedure 32 provides, in part, "[a]n objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving the notice." Fed. R. Civ. P. 32(d)(1). Codexis states that "[d]efendants did not object to the deposition notice at all, much less 'promptly' as the rule requires[.]" Opp'n at 12. Codexis also points to another section of Rule 32, requiring that a deposition taken on short notice must not be used against a party who "promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place[.]" Fed. R. Civ. P. 32(a)(5)(A).

Codexis highlights one of the cases cited by EnzymeWorks to prove its point that defendants have waived any objection. In *Rushing v. Board of Supervisors of University of Louisiana Systems*, the court found that certain deposition notices were improperly served because "[p]laintiff ha[d] not shown that any of the defendants' attorneys to whom the deposition notices were sent by email consented in writing to receive service of papers directly from other counsel by electronic means." 270 F.R.D. 259, 261 (M.D. La. 2010). The court nonetheless found that defendants had waived their objection because they did not promptly object nor did they move to quash. *Id*. Notably, the court also rejected defendants' argument that defense counsel "did not know of the scheduled depositions because plaintiff's counsel failed to send the notices to Galbraith's 'calendaring' email address." *Id*. The court found that notice was reasonable because it was sent to the attorneys' email address, and the record showed that at least one of them

---

non-party deposition over which there were no disputes and no objections." Lumish Decl. ¶¶ 2–4; Gross Decl. ¶¶ 2–4.

And second, while defendants point out that Strem's deposition was not included in Li's summary of scheduled depositions, Mot. at 6, Codexis retorts that Li's email was sent three hours *before* Codexis served defendants with notice of the Strem deposition, so of course it was not included in the summary, Opp'n at 16.

5

received the notices and others "were at least aware of them." *Id*. Even though defense counsel raised a conflict with the noticed dates, in the absence of new and confirmed dates, the depositions remained scheduled and the deponents were required to appear. *Id*. The court therefore granted plaintiff's sanctions motion in part, awarding a portion of the attorney's fees incurred in preparing for the deposition. *Id*. at 262.

Codexis has an even stronger case for finding waiver here because defendants explicitly agreed to receive service by email. *See* Dkt. No. 33. In Reply, defendants fail to address Codexis's waiver argument and instead focus on their contention that the notice was unreasonable.

### 2. Even Ignoring Waiver, Defendants had Reasonable Notice and Failed to Identify Any Conflict with the Noticed Deposition

Codexis argues that, even if defendants had not waived their argument by failing to promptly object, they had reasonable notice of the deposition, so there is no basis to preclude Codexis from using it against them. Opp'n at 15. Defendants counter that Codexis's notice was not reasonable, and they point to the local rules and ethical guidelines for support. They contend that they never received notice of the deposition date because "Mr. Gross's email on 8/8 … was the typical initiation of a subpoena process[,]" and the date of the subpoena served only as a "place holder" pending confirmation. Li Decl. ¶ 6, 10, 11. Because their request for a confirmation went unanswered and Codexis's counsel did not forward the confirmation from Strem's counsel that it would accept service on Strem's behalf, they never received "reasonable notice" of the deposition date. Reply at 5. According to defendants, if they had received confirmation, then they would have objected to the date, or requested re-scheduling of the Gao deposition.[6] Li Decl. ¶12. Defendants insist that "each deposition in this case has been formally noticed, discussed, confirmed, and re-confirmed to avoid misunderstanding." Li Decl. ¶5. And they highlight that notices have included proofs of service, and that the practice applies to parties and third parties. Li Decl. ¶¶ 4–5; *id*., Exs. A, B, C. Defendants also contend that Codexis never attempted to meet

---

[6] Defendants repeatedly refer to the Gao deposition taking place "on the same day." *E.g.*, Mot. at 1, 5, 7, 8; Reply at 4. While they were scheduled close in time—Gao at 8:00 p.m. pacific coast time on August 17, and Strem at 9:00 a.m. east coast time—they were not literally scheduled on the same day.

6

1    and confer with them prior to scheduling the deposition, in violation of the local rules.

2    But defendants cannot—and do not—argue that they were unaware of Codexis's plan to depose Strem on August 18, 2017 at 9:00 a.m. If, after August 8, 2017, defendants' lawyers really wondered when the Strem deposition would occur, all they had to do was pick up the telephone or ask in any conversation they had with plaintiff's counsel in the ten days leading up to the deposition. Under these circumstances, Codexis has a strong argument that notice was reasonable, and the burden was on defendants to object. *See In re Ashley*, 903 F.2d 599, 603 (9th Cir. 1990)(finding deposition admissible against a party because attorney had received notice, even though the attorney was in the process of withdrawing and the party nor his attorney attended); *cf. Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000)(affirming district court decision excluding deposition testimony because "plaintiff's counsel continued to insist on going forward with the deposition, despite defendants' counsel's clear indication of her understanding that the deposition had been continued."). In the absence of an explicit objection, it was reasonable for Codexis to proceed with the understanding that the deposition would take place on the date and time noticed, and anticipating defense counsel's participation.

I see no basis for striking the deposition. But to mitigate any potential prejudice, the parties should schedule a second deposition with Strem in which each side will be responsible for its own costs and fees. Defendants are ordered to pay for the reporter.

### 3. No Grounds For Sanctions

Codexis insists that it and its counsel "have acted transparently and in good faith" and defendants fail to "identif[y] any action or statement of misconduct by Codexis or its counsel." Opp'n at 16. It urges that defendants' "baseless sanctions motion" must be denied and that defendants should be reminded "about the need for professionalism and courtesy" among lawyers and forced to pay Codexis's attorney's fees for opposing this frivolous motion. Opp'n at 21. For support, they point to orders from other judges in other actions denying LiLaw's sanctions motions. Gross Decl., Exs. 27–30. But defendants insist that it was Codexis's actions subsequent to the attempted notice of the Strem deposition that justifies sanctions, including counsel's "audacity to suggest that the deposition be retaken with Defendants paying Codexis the travel

7

expenses and legal fees." Reply at 9. Defendants refer to this offer as a "lack of remorse and act of defiance[.]" *Id.*

The parties go to great length to disparage one another. However, I fail to see how responsibility for the current situation falls squarely and definitively on one side. Counsel for both parties could have communicated more clearly and effectively. In the absence of any deliberate misconduct, I see no basis for awarding sanctions.

## II. MOTION TO DISMISS 17TH AND 18TH CLAIMS (DKT. NO. 137)

Defendants once again challenge Codexis's ability to state claims for voidable transfer under California Civil Code section 3439 and fraudulent transfer based on the common law. MTD at 1 (Dkt. No. 137). I rejected this argument when it was first raised in opposition to Codexis's motion for leave to file an amended complaint, Dkt. No. 108. I previously explained that defendants "confuse Codexis's right to recover under the UVTA, with its ability to state a claim under the UVTA." Order Granting Codexis Leave to Amend at 8 (Dkt. No. 127). It remains clear that Codexis's "claim" exists "whether or not the right is reduced to judgment[.]" Cal. Civ. Code § 3439.01(b). Moreover, defendants continue to ignore the potential for the existing judgment against the Corporate Defendants to apply to Tao under Codexis's alter ego theory of liability. Order Granting Codexis Leave to Amend at 8. The fact that a judgment is not necessary to state a claim disposes of defendants' argument, but the existence of a partial judgment and a plausible theory of liability completely destroy it.[7]

Defendants then filed a motion for leave to file a motion for reconsideration of the order granting Codexis leave to amend. Dkt. No. 128. They raised the same argument again, without citing new facts, new law or a manifest failure by the Court to consider such facts or law. Those elements are required for a party to seek reconsideration. Civ. L. R. 7-9(b). It is not enough that a party disagrees with the Court's ruling. Defendants' motion was improper.

---

[7] Although I do not think it is necessary to fully address defendants' constitutional argument, I pause to note that they have failed to clearly articulate how allowing Codexis's claims to proceed past the pleading stage amounts to a deprivation of property without due process of law. *See* Reply at 5–6.

8

Twelve days after filing the improper motion for leave to file a motion for reconsideration, defendants filed this motion to dismiss, for the third time arguing that a judgment is a condition precedent to a claim for fraudulent conveyance.[8] MTD at 4. In opposition, Codexis seeks sanctions against defendants in the form of an award of reasonable attorneys' fees incurred in opposing the motion, which Codexis argues recklessly multiplied these proceedings. Opp'n at 5.

Defendants counter that they have not acted in bad faith because their motion is based on "well established Supreme Court authority that a judgment is a condition precedent to an action for fraudulent transfer." Reply at 8. But it is undisputed that I previously rejected this argument in granting Codexis leave to file an amended complaint, in which I explicitly considered the plausibility standard of Rule 12(b)(6). *See* Order Granting Codexis Leave at 6–8. In filing its motion for leave to reconsider, and this motion to dismiss, defendants have unreasonably multiplied the proceedings. *See* 28 U.S.C. § 1927.

During the hearing, defense counsel argued that it was reasonable to raise the same issues in their motion to dismiss 12 days after they filed a motion for leave to file a motion for reconsideration, which I had yet to rule on. I disagree. As indicated, the motion for leave simply disagreed with my prior ruling and was improper. LiLaw shall pay plaintiff's counsel $10,000 as a civil sanction for needlessly multiplying this litigation and violating the Local Rules. Civ. L.R. 7-9(c).

The manner of litigation that I have witnessed since LiLaw's appearance in this matter—and on which other courts have previously remarked—greatly disturbs me. This sanction is undoubtedly far less than what plaintiff's counsel would have sought if I allowed full compensation for reasonable attorney's fees in opposing the motion. But this should serve as a warning to the lawyers in this case, particularly at LiLaw, that my patience with the nitpicking,

---

[8] But they rely on different cases, many of which are more than a century old, *e.g.*, *Cates v. Allen*, 149 U.S. 451, 457 (1893); *Swan Land & Cattle Co. v. Frank*, 148 U.S. 603, 612 (1893); *Scott v. Neely*, 140 U.S. 106, 114 (1891); and none of which address current California law, *e.g.*, *White Co v. Finance Corp. of America*, 63 F.2d 168, 169-170 (3rd Cir. 1933); *Sharp v. Hawks*, 80 F.2d 731, 732 (8th Cir. 1936); *Widener v. Hartnett*, 12 Cal.2d 287, 289 (1938). They cite addition cases in reply.

9

formalistic, overly aggressive manner that has characterized the discovery process is at an end.[9]

### III. DEFENDANTS' MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMATION TO EXPERT (DKT. NO. 134)

Defendants filed a motion seeking permission to disclose confidential information to their designated expert Dr. Romas Kazlauskas. Dkt. No. 134. Codexis filed a statement of non-opposition, Dkt. No. 142, and the motion is GRANTED.

### IV. CODEXIS'S MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMATION TO EXPERT (DKT. NO. 143)[10]

Codexis moves, pursuant to the Stipulated Protective Order ("SPO")(Dkt. No. 64), to disclose confidential information to its expert witness, Dr. David Dodds.[11] Mot. for Leave to Disclose Confidential Information to Expert Witness at 1 (Dkt. No. 143). Dr. Dodds is an expert

---

[9] The parties have indicated that they may have additional discovery disputes, even though the fact discovery period has closed. At the Case Management Conference that followed the law and motion hearing, I directed counsel to conclude their meet and confer process on any outstanding discovery and, if their disputes are not resolved, to file omnibus motions to compel any discovery that a party asserts has not been provided by December 13, 2017. Oppositions are due December 27, 2017, and replies by January 3, 2018. The hearing on these motions will be on January 17, 2018. It goes without saying that I hope the parties will act in a collaborative way to resolve the remaining issues. I will award reasonable attorney's fees to the prevailing party if motions are brought.

[10] During meet and confer efforts on this and defendants' similar motion (Dkt. No. 134), Codexis offered to withdraw its objections to defendants' use of Dr. Kazlauskas, who has ongoing confidentiality obligations to Codexis, if defendants would not oppose Dr. Dodds. Wang Decl. ¶¶ 4, 8. Defendants declined the offer, but Codexis still chose not to oppose defendants' expert. Wang Decl. ¶ 8. Defendants characterize this set of events in a different light. *See* Opp'n at 1.

[11] The SPO defines an expert as,
> A person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant specifically in this action, (2) does not have a current business relationship with a Party or Party's competitor, and (3) at the time of retention, is not anticipated to enter into a business relationship with a Party or of a Party's competitor. Business relationship, for the purposes of this provision only, means being a current employee, being a current consultant pursuant to a consulting agreement, and/or being a current member of the Board of Directors or Scientific Advisory Board of a Party or of a Party's competitor. For the purposes of this provision only, any person who has served or anticipates serving a Party or a Party's competitor only as an expert or a consultant in litigation matters shall not be considered to have a business relationship with a Party or Party's competitor.

SPO, § II.G at 2:12–23.

in biocatalysis, biotransformations, and the use of enzymes for chemical processes. Dodds Decl. ¶ 3 (Dkt. No. 143-2). Defendants objected to the disclosure of their confidential information to Dr. Dodds on the basis that he consults for three biological companies[12] that purportedly directly compete with EnzymeWorks. Wang Decl. ¶ 3 (Dkt. No. 143-3). According to Codexis, defense counsel could not show facts that the companies actually compete with EnzymeWorks; rather, counsel's objection, which was made prior to consulting with his clients, was based on speculation following a review of the companies' websites. *Id*. Dr. Dodds attested that the companies do not compete with EnzymeWorks, Dodds Decl. ¶¶ 6–8, and he has signed an agreement to be bound by the Stipulated Protective Order. Wang Decl. ¶ 2; Dodds Decl., Ex. 1.

In determining whether confidential information should be disclosed to a party's chosen expert, "the court must balance [the receiving party's] interest in electing the experts most beneficial to its case with [the disclosing party's] interest in protecting its trade secrets from disclosure to competitors." *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, No. 95-20169 RMW (EAI), 1996 WL 908654, at *3 (N.D. Cal. Oct. 28, 1996). An objection should not be sustained on the grounds that an expert "will inevitably misuse [the confidential] information if he consults for [the disclosing party's] competitors in the future because the information will be in his head." *Id*. This would effectively give a party "the power of veto over its adversary's choice of experts." *Id*. "Where the parties have agreed to, and the court has entered, a protective order, 'the party opposing disclosure of confidential information has the burden of establishing that there is good cause to continue the protection of the discovery material.'" *Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*, 2013 WL 3367575, at *3 (S.D. Cal. July 5, 2013)(quoting *In re Roman Catholic Archbishop of Portland,* 661 F.3d 417, 424 (9th Cir. 2011)). The parties have entered into a stipulated protective order, which requires that "the Party opposing disclosure to the Non-Party shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Non-Party." Dkt. No. 64 at 18.

---

[12] The companies are Rondaxe LLC, Azitra, Inc., and BioChemInsights, Inc. Wang Decl. ¶ 5.

11

In opposition,[13] defendants articulate Dr. Dodds's relationships with specific companies: he currently serves as a Senior Advisor at Rondaxe LLC, he serves as Chief Technology Officer at Azitra, Inc., a consultant for BioChemInsights, Inc., and he sits on the Scientific Advisory Board of ZuChem. Tao Decl. ¶ 6; *id.*, Ex. A (Dkt. No. 149-1). Defendants assert that Rondaxe offers a number of chemical manufacturing and control consulting services, including "Fermentation & Biocatalysis Development" and "Drug Product Development." *Id.*, Ex. C. According to Dr. Dodds's resume, his duties at Rondaxe include "scale-up and process optimization for fermentation, semi-synthetic, and natural product fermentation process for the production of human therapeutics," and advising on enzymatic processes. *Id.*, Ex. A. Defendants contend that Rondaxe directly competes with their human therapeutics business, and they point to one of Rondaxe's clients, AMPAC Fine Chemicals, which is also a customer of EnzymeWorks. Tao Decl. ¶¶ 2, 6. With respect to Azitra, a company whose business is limited to the field of skin therapeutics, defendants argue that the limited scope of Azitra's business "does not diminish the competition between the companies[.]" Opp'n at 4. And they indicate that "BioChemInsights synthesizes milligram to kilogram quantities of medical chemistry compounds and pre-clinical development candidates for its customers[,]" which is the same service EnzymeWorks provides. *Id.*; *see also* Tao Decl. ¶ 10, Ex. E. Lastly, they assert that zuChem is a direct competitor because both companies develop enzymatic glycosylation methods for its end-user products. Tao Decl. ¶ 12, Ex. A. Defendants point to these relationships to argue that Dr. Dodds is barred as an expert under the express terms of the SPO. Opp'n at 5; *see* supra note 11 (reciting SPO's definition of an "expert").

> Codexis distills defendants' objections down to the following:
> (1) Azitra's *use of DNA insertion* to engineer bacteria to produce therapeutic proteins is competitive to EnzymeWorks's biocatalysis business; (2) Rondaxe's *consulting about fermentation* processes for production of human therapeutics directly competes with EnzymeWOrks; (3) BioChemInsight's provision of *chemical manufacturing* services including chemical development and enzymatic catalysis competes with EnzymeWorks's services; and,

---

[13] Codexis advises that "[t]he Court should view skeptically any such argument assembled to apply retroactively, to substantiate an objection made without factual support in the first instance." Reply at 2.

12

> for the first time, (4) zuChem's "focus" on enzymatic *methods for glycosylation* directly competes with EnzymeWorks's development of glycosylation methods.

Reply at 3 (emphasis in original)(Dkt. No. 154). It then counters each point. First, Dr. Dodds attested that Azitra's business, which is limited to the cosmetics and therapeutics space, is unrelated to EnzymeWorks and the two are not direct competitors. Dodds Decl. ¶ 6. Codexis argues that "virtually every biotech lab" uses DNA insertion, and that alone cannot justify a finding that the two companies are direct competitors. Reply at 3. Second, Codexis reiterates that Rondaxe is a consulting company that markets software products, and defendants offer no facts showing that the two companies are direct competitors. Third, Dr. Dodds declared that "BioChemInsights is the only company in the electrochemical regeneration space and therefore does not compete with EnzymeWorks." Dodds Decl. ¶ 7. Codexis contends that defendants do not argue that they compete in this space; rather, they focus on the generic area of chemical manufacturing and production, which is insufficient to establish that the two companies are direct competitors. And last, Codexis argues that defendants' objections to zuChem should be stricken because they were not previously raised during meet and confer efforts, as required by the SPO. Reply at 5; *see* SPO, § VII.F at 14. But even if defendants' waiver is ignored, Codexis insists that zuChem's business is limited to glycosylation and none of the documents produced by EnzymeWorks in this matter pertain to glycosylation, so there can be no risk presented by disclosure. Reply at 5.[14]

I agree with Codexis that defendants have failed to meet their burden to establish that the companies with which Dr. Dodds has an ongoing relationship directly compete with them. And even if the companies were found to be competitors, the technology at issue here is clearly different than the subjects of "competition" identified by defendants, and, as a result, none of their disclosures pertain to those potentially problematic areas. Further, I find persuasive Codexis's arguments regarding Dr. Dodds's unique fitness. I see no reason to deny him access to

---

[14] Codexis also underscores defendants' shifting position with respect to disclosure. Dr. Tao previously testified that his companies do not make enzymes and enzyme kits anymore, so they no longer compete with Codexis. According to Codexis, "[t]hey should not be heard now to claim that they directly compete with four other companies whose businesses are even more removed than Codexis's from the technologies involved in this case[.]" Reply at 6.

13

EnzymeWorks's disclosures in this case, especially given his signed agreement to be bound to the protective order. Codexis's motion is GRANTED.

## CONCLUSION

In accordance with the foregoing, defendants' motion to strike the Strem deposition is DENIED. The parties should schedule a second deposition, for which each side will be responsible for its own costs, and defendants shall pay for the court reporter. Defendants' motion to dismiss the 17th and 18th claims, as well as their motion for leave to file a motion for reconsideration, are DENIED. LiLaw shall pay plaintiff $10,000 as civil sanctions as a result of the violation of Civil Local Rule 7-9(c) and for needlessly multiplying this litigation. Defendants' motion for leave to disclose confidential information is GRANTED. Codexis's motion for leave to disclose confidential information is GRANTED.

**IT IS SO ORDERED.**

Dated: December 4, 2017

William H. Orrick
United States District Judge

14