DOUGLAS E. LUMISH (Bar No. 183863)
doug.lumish@lw.com
GABRIEL S. GROSS (Bar No. 254672)
gabe.gross@lw.com
PATRICIA YOUNG (Bar No. 291265)
patricia.young@lw.com
LINFONG TZENG (Bar No. 281798)
linfong.tzeng@lw.com
JIE WANG (Bar No. 306395)
jie.wang@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

Attorneys for Plaintiff CODEXIS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CODEXIS, INC. | CASE NO. 3:16-cv-00826-WHO |
| Plaintiff, | |
| v. | **CODEXIS'S NOTICE OF MOTION AND MOTION TO HOLD ENZYMEWORKS AND JUNHUA TAO IN CONTEMPT FOR VIOLATING THE COURT'S ORDER RESTRICTING PUBLIC STATEMENTS** |
| ENZYMEWORKS, INC., a California corporation, ENZYMEWORKS, INC., a Chinese corporation a/k/a SUZHOU HANMEI BIOTECHNOLOGY CO. LTD d/b/a ENZYMEWORKS, INC. (CHINA), JUNHUA TAO, an individual, and ANDREW TAO, an individual | Date: March 28, 2018<br>Time: 2:00 pm<br>Courtroom: 2<br>Judge: William H. Orrick<br>Trial Date: June 18, 2018<br>Action Filed: February 19, 2016 |
| Defendants. | |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................... iv

STATEMENT OF RELIEF REQUESTED.............................................................................. iv

ISSUE TO BE DECIDED ........................................................................................................ iv

I.   INTRODUCTION ........................................................................................................ 1

II.  RELEVANT FACTS .................................................................................................... 2

    A.   Codexis files suit after catching EnzymeWorks infringing Codexis's biocatalysis patents and copying its trade secrets. ............................... 2

    B.   EnzymeWorks concedes its patent infringement. ................................................ 2

    C.   The parties resolve their differences with a settlement agreement and a stipulated order restricting any public statements about the settlement. ............................................................................................................ 4

    D.   EnzymeWorks and Dr. Tao immediately violate the Court's order. ..................... 5

III. LEGAL STANDARDS FOR CONTEMPT ................................................................. 7

IV.  ENZYMEWORKS AND DR. TAO ARE IN CONTEMPT OF COURT......................... 9

    A.   EnzymeWorks and Dr. Tao willfully violated the Court's order........................... 9

    B.   EnzymeWorks's and Dr. Tao's violation of the Court's order was not merely technical or *de minimis*, but flagrantly defied its central purpose. ............................................................................................................ 10

    C.   No reasonable interpretation of the Court's order could justify EnzymeWorks's and Dr. Tao's knowing violation of it. ..................................... 10

V.   ENZYMEWORKS, DR. TAO, AND THEIR COUNSEL SHOULD BE HELD IN CONTEMPT, SANCTIONED, AND CODEXIS SHOULD BE FAIRLY COMPENSATED. ....................................................................................................... 12

VI.  CONCLUSION............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bradford Techs., Inc. v. NCV Software.com*,
   No. C 11-04621 EDL, 2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ...........................................10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ..............................................................................................8, 10

*FTC v. EDebitPay, LLC*,
   695 F.3d 938 (9th Cir. 2012) ..................................................................................................12

*General Signal Corp. v. Donallco, Inc.*,
   787 F.2d 1376 (9th Cir. 1986) ...........................................................................................8, 13

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)..................................................................................................................8

*NLRB v. Ironworkers Local 433*,
   169 F.3d 1217 (9th Cir. 1999) ..................................................................................................8

*Reebok Int'l v. McLaughlin*,
   49 F.3d 1387 (9th Cir. 1995) ....................................................................................................8

*Reno Air Racing Ass'n v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ..................................................................................................8

*Sepehry-Fard v. Select Portfolio Servicing, Inc.*,
   No. 14-cv-05142-LHK, 2016 WL 4436312 (N.D. Cal. Aug. 23, 2016)....................................8

*UL LLC v. Space Chariot, Inc.*,
   No. 2:16-cv-08172, 2017 WL 1398317 (C.D. Cal. Apr. 10, 2017)...........................................8

*Whittaker Corp. v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) ..................................................................................................12

### STATUTES

35 U.S.C. § 285................................................................................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 28, 2018 at 2:00 p.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Orrick at the United States District Court for the Northern District of California, San Francisco Division located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff Codexis, Inc. will move and hereby does move the Court for an order holding defendants EnzymeWorks, Inc., a California corporation, EnzymeWorks, Inc., a Chinese corporation a/k/a Suzhou Hanmei Biotechnology Co. Ltd d/b/a EnzymeWorks, Inc. (China), (collectively, "EnzymeWorks") and Junhua Tao, an individual, in contempt for their knowing violation of the Court's Stipulated Protective Order (Dkt. No. 185). This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities and accompanying declarations, and any additional evidence or argument received by the Court.

**STATEMENT OF RELIEF REQUESTED**

Codexis respectfully requests that the Court issue an order (1) holding EnzymeWorks and Dr. Tao in contempt for violating the Court's February 6, 2018 order; (2) requiring them to retract and withdraw all statements made in violation of that order, with an explanation that the Court has found those statements to have been made in violation of a court order; (3) sanction EnzymeWorks, Dr. Tao, and their counsel as needed to coerce their obedience to the Court's order; and (4) compensate Codexis with an award of its reasonable costs and attorneys' fees for pursing this contempt action.

**ISSUE TO BE DECIDED**

Whether EnzymeWorks and Dr. Tao should be held in contempt for making prohibited public statements concerning the settlement of this action in violation of (1) the Court's order that "[t]he parties may make only the agreed statement" attached to the order and (2) the Court's order barring the parties "from making any other statement or disclosure" regarding the settlement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Before the ink was even dry on the parties' settlement agreement, the defendant EnzymeWorks companies and their founder Alex Tao violated it. They disregarded its confidentiality restrictions by widely publishing an erroneous, one-sided, self-serving narrative about the conclusion of this lawsuit. They audaciously proclaim they are "always committed to taking responsibility for IP" (among other misstatements), after deliberately copying and infringing Codexis's patents until they were caught red-handed. Worse, their public statements brazenly violated a stipulated court order—the same day it was issued—that tightly restricts what the parties are permitted to say about the settlement. The Court ordered that "[t]he parties may make *only the agreed statement*, attached as Exhibit 1 to any third party concerning the settlement of the above-captioned action." The Court further ordered: "The parties are *prohibited from making any other statement* or disclosure regarding the settlement of this action to any third party." Undeterred, EnzymeWorks and Dr. Tao published press releases that deviate wildly from the short, objective "agreed statement," violate the prohibition on "making any other statement," and perpetuate a false narrative about the settlement of this case. This leaves Codexis, which has honored the restrictions in the Court's order, unable to respond to customers and others who have inquired about the defendants' biased, one-sided versions of events. The defendants' blatant disregard for the Court's order and its authority, not to mention their failure to honor their promises to Codexis, leaves Codexis no choice but to file this motion to enforce the order and seek appropriate sanctions.

Out of a concern that EnzymeWorks and Dr. Tao could not be trusted to present to the public an accurate depiction of the resolution of this case, Codexis proposed and the parties agreed on a stipulated order to address the issue. One of the parties' final points of negotiation in their settlement discussions was the language of an "agreed statement" they would be allowed to make publicly. Codexis insisted that any order governing the parties' public statements have real teeth, to deter violations and appropriately penalize them if they should happen. To that end, the parties agreed and the Court ordered that the order restricting the parties' public statements "shall be enforceable by motion, including without limitation, *a motion for contempt*." Codexis hoped this

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

would be sufficient to deter EnzymeWorks and Dr. Tao from making impermissible or misleading public statements after the case had settled. It was not. EnzymeWorks and Dr. Tao have made prohibited publications in contempt of the Court's order, necessitating this motion.

## II.   RELEVANT FACTS

### A.   Codexis files suit after catching EnzymeWorks infringing Codexis's biocatalysis patents and copying its trade secrets.

Codexis was compelled to bring this lawsuit after it caught EnzymeWorks and Dr. Tao red-handed infringing Codexis's biocatalysis patents and misappropriating its trade secrets. The evidence was overwhelming: EnzymeWorks and Dr. Tao had been copying Codexis's proprietary engineered enzymes and plasmids, using specific DNA and amino acid sequences to make exact replicas of Codexis's enzymes. (2nd Amd. Complaint, Dkt. No. 129 at ¶¶ 40-49, 81-243.) EnzymeWorks's products contained lengthy DNA sequences that matched Codexis's trade secret plasmids with 100% fidelity, a telltale sign of EnzymeWorks's and Dr. Tao's deliberate copying, which confirmed their infringement beyond question. (*Id.* at ¶¶ 2-49, 244-261.)

EnzymeWorks's and Dr. Tao's copycat business model gave rise to a host of other causes of action as well, including breach of contract, tortious interference, and unfair competition. (*Id.* at ¶¶ 262-308.) To protect and defend its rights and innovations, Codexis brought its claims against EnzymeWorks and Dr. Tao, who once had been a trusted partner to Codexis. Dr. Tao previously worked at an American pharmaceutical company that collaborated closely and confidentially with Codexis. (*Id.* at ¶¶ 2-20, 45-49.) Through that collaboration, he gained access to some of Codexis's most competitively sensitive and confidential information and biomaterials. (*Id.*) Within a few years, he founded his own company in China to make knock-off products that competed with Codexis's own offerings. (*Id.* at ¶¶ 10-20.) Because of Dr. Tao's personal involvement with and access to Codexis's proprietary information, Codexis sued him in his individual capacity as well as the EnzymeWorks companies he founded.

### B.   EnzymeWorks concedes its patent infringement.

EnzymeWorks ultimately capitulated on every one of Codexis's claims for patent infringement. Counts I through X of the complaint describe in detail the infringement of dozens of claims

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

of ten separate Codexis patents. EnzymeWorks eventually stipulated to summary judgment of infringement of all ten patents, and later to a final, non-appealable consent judgment and a permanent injunction barring any future infringement. (Dkt. Nos. 102, 184, 186.)

From Codexis's perspective, these concessions were inevitable. EnzymeWorks could not have defended the infringement claims in good faith given the overwhelming evidence against it, including perfect DNA "fingerprints" confirming its willful and extensive copying. EnzymeWorks did not dispute its infringement, did not challenge the patents' validity, and could not have defeated a summary judgment motion. Nor could a jury have reached any conclusion other than the infringement being willful, given the clear evidence of copying which was confirmed by Dr. Tao's testimony and admissions to the Court.[1]

EnzymeWorks, however, tried to spin its admissions of infringement as a mere business decision, claiming that any damages it owed to Codexis were minimal and would be outweighed by the cost of litigating the patent claims. (*See, e.g.*, Stipulated Order, Dkt. No. 102 at 2.) Dr. Tao issued a press release last year making unsubstantiated claims about the purportedly "small potential damages" and his companies' "very limited" exposure, and attacked Codexis and its CEO as making "untrue" and "ridiculous" claims. (Ex. A.)[2] Codexis, not surprisingly, disagreed with EnzymeWorks's and Dr. Tao's flip view of damages. Their infringement alone permitted EnzymeWorks and Dr. Tao to avoid untold millions of dollars and years of labor in research and development, and enabled them to unfairly gain a foothold in the rapidly growing market for biocatalysts—tremendous value that equated to many millions of dollars in damages. (*See, e.g.*, CMC Stmt., Dkt. No. 80 at 3.) Given the clear willfulness of the infringement and the mounting record of EnzymeWorks's and Dr. Tao's litigation misconduct (*see, e.g.*, Order, Dkt. No. 160 at 5-6 (sanctioning defense counsel); Motion to Compel, Dkt. No. 166), Codexis intended to prove the

---

[1]   *See, e.g.*, Tao Decl., Dkt. No. 170-2, ¶ 4 ("[W]e reverse engineered Codexis's ATA and KRED enzymes …. We included Codexis's ATA and KRED enzymes together with our own enzymes" in EnzymeWorks' products); Tao Decl., Dkt. No. 117-2, ¶ 5 (admitting EnzymeWorks "extract[ed] the KRED and ATA plasmids and transformed bacteria using the plasmids for producing Codexis' version of ATA and KRED to include them as controls and comparisons for EnzymeWorks' kits.")

[2]   References to "Ex." refer to exhibits to the accompanying Declaration of Gabriel S. Gross.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

case "exceptional" under 35 U.S.C. § 285 and seek an enhancement of the damages award and a full recovery of its attorneys' fees. Facing this significant legal risk, EnzymeWorks did not concede infringement because the damages were minimal. They were not. EnzymeWorks admitted infringement because it got caught red-handed and had no other choice.

These sort of disputes over EnzymeWorks's motivation for admitting its infringement and the true extent of damages played out in public statements as well as in court. As explained further below, these are the very types of disputes Codexis hoped to avoid by reaching a settlement. (Nichols Decl., ¶ 3.)

**C. The parties resolve their differences with a settlement agreement and a stipulated order restricting any public statements about the settlement.**

The parties entered into a confidential settlement agreement on February 1, 2018. They also publicly filed stipulations that led the Court to enter (1) a final, non-appealable judgment of patent infringement against EnzymeWorks (Dkt. No. 186); (2) an injunction barring further infringement by EnzymeWorks and any person acting in concert or participation with it (Dkt. No. 184); and (3) a stipulated order ensuring the confidentiality of the settlement agreement and restricting what the parties could say publicly about the resolution of the lawsuit. (Dkt. No. 185). The Court's order is clear:

> 3. The parties may make only the agreed statement, attached as **Exhibit 1**, to any third party concerning the settlement of the above-captioned action. The parties are prohibited from making any other statement or disclosure regarding the settlement of this action to any third party.
>
> 4. Jurisdiction to enforce this Stipulated Protective Order ("Order") shall remain with this Court. This Order shall be enforceable by motion including, without limitation, a motion for contempt.

(*Id.* at 2.) The agreed-upon statement, incorporated into the order as Exhibit 1, is equally clear:

> **Agreed Statement**
>
> Codexis, Inc. ("Codexis") and EnzymeWorks, Inc. (U.S.), Suzhou Hanmei Biotechnology Co. Ltd, d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks"), Junhua Tao, and Andrew Tao have reached a settlement concerning the lawsuit filed by Codexis against EnzymeWorks, Junhua Tao, and Andrew Tao in the United States District Court for the Northern District of California. The parties have entered into a settlement agreement, the terms of which are confidential. The parties have also stipulated to a judgment of patent infringement of all asserted patents against EnzymeWorks, and a permanent injunction barring any future infringement. The remaining claims against EnzymeWorks, and all claims against Junhua Tao, and Andrew Tao including trade secret misappropriation, breach of contract and voidable transfer have been dismissed with prejudice.

(*Id.* at 5.)

There is no ambiguity here. The order permits the parties to make "only" one public statement about the settlement: a concise, four-sentence statement objectively describing the existence of a confidential settlement agreement and the disposition of several of the claims. The order makes equally clear that the parties "are *prohibited* from making any other statement or disclosure regarding the settlement." And on its face, the order is enforceable by a contempt motion.

### D. EnzymeWorks and Dr. Tao immediately violate the Court's order.

After agreeing to make only the single, agreed-upon statement about the settlement, EnzymeWorks and Dr. Tao immediately violated that commitment. On February 5, 2018, they issued a press release titled "EnzymeWorks, Inc. and Codexis, Inc. Reach a Settlement Agreement." (Ex. B.) Among other problems, it: (1) violates the parties' stipulation (and soon-to-issue court order) by deviating significantly from the "agreed statement"; (2) directs the reader via a hyperlink to a self-serving press release EnzymeWorks and Dr. Tao had issued attacking and threatening legal claims against Codexis and its CEO, and putting its own biased spin on the admission of infringement; (3) tells the reader that "some guidelines are coming up to minimize legal risks" in the biocatalysis industry, with a link to another self-serving article authored by Dr. Tao[3]; (4) contains a

---

[3]   In his article, Dr. Tao complains that "the sequence of an enzyme should not be patented," arguing that patented enzymes "may become a legal trap for willful patent infringement," warning others to "avoid the enzymes with any trade secret string attached," and complaining about what he describes as "overreaching IP protection in the hand of ill-intentioned enzyme suppliers." (Ex. G.)

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

self-laudatory description of EnzymeWorks, including that it purportedly is a "world leader" in the field; (5) contains material false statements, like "EnzymeWorks develops its own enzymes and processes via retrosynthetic integration with chemical transformation, and is always committed to taking responsibility for IP," "All claims against EnzymeWorks' founder Alex Tao have been dismissed with prejudice," and "Claims against EnzymeWorks including trade secret misappropriation and breach of contract have been dismissed with prejudice," none of which has happened yet. Unusually, the press release also thanks, compliments, and provides a detailed description of the defense counsel's law firm LiLaw Inc. and lawyer J. James Li—which strongly suggests counsel's direct involvement in the press release. (*Id.*)

Codexis's counsel immediately raised this with EnzymeWorks's and Dr. Tao's counsel, and requested a retraction of the impermissible and false statements in the press release, while reserving Codexis's rights to seek appropriate remedies, including a contempt finding. (Ex. C.) Mr. Li explained by phone that he already was aware of the press release, and believed his clients had hurried to get it published before the Chinese New Year. (Gross Decl., ¶ 3.) He reiterated this in an email that afternoon, and suggested that his clients' press release was "not substantively different" from the agreed statement. (Ex. D.) Codexis rejected these positions. (Ex. E.) Later that day, Mr. Li continued to argue that "there is really not much substantive difference" between the press release and the only public statement permitted by the order, but said, "I will ask the client to withdraw the press release." (Ex. F.)

The Court entered its order the following day, February 6, shortly before eleven o'clock in the morning. (Dkt. No. 185.) Just a few hours later, Mr. Li emailed Codexis's counsel advising that "the press release issued yesterday was withdrawn," and he provided a link to a new press release intended, purportedly, "to correct the previous one." (Ex. H.) But this new press release, misleadingly titled "EnzymeWorks, Inc. Resumes Focus on Biocatalysis," only exacerbated the problem. (Ex. I.) Far from restraining themselves to the agreed-upon, court-ordered statement, EnzymeWorks and Dr. Tao (1) *added* another self-serving statement about their purportedly "limited exposure" arising from their patent infringement (despite the evidence that damages would

1  reach many millions of dollars); (2) editorialized about how they "fiercely denied any other liabil-
2  ities" in the case, and (3) continued to direct the reader with hyperlinks to their earlier, one-sided
3  publications about the lawsuit and purported "legal risks" in the biocatalysis industry (*Id.* (con-
4  taining links to Exs. J and G).) And again, this press release praised Mr. Li and his law firm and
5  extolled the virtues of EnzymeWorks as a purported world leader in its field.

6  Codexis advised EnzymeWorks and Dr. Tao that their latest press release "is a clear viola-
7  tion of the protective order Judge Orrick issued today" and explained the reasons why, including
8  its many deviations from the agreed-upon statement. (Ex. K.) Mr. Li argued that the press release
9  is permissible because it is "not just about the settlement," but also included other topics. (Ex. L.)
10 He further argued, "Surely the settlement agreement does not prohibit talking the settlement agree-
11 ment (*sic*) using the exact languages (*sic*) in a broader context." (*Id.*) Codexis disagrees; the order
12 is clear in its prohibitions.

13 By February 15, EnzymeWorks and Dr. Tao had taken more steps to publish and further
14 disseminate their contemptuous press release. A link to the latest press release now appears prom-
15 inently on the "News" frame on the homepage of EnzymeWorks's website, and clicking on it leads
16 to a new version, dated February 7. (Ex. M.) This "news" piece contains the same fantastical spin,
17 the same links directing readers to other one-sided press releases, and the same type of self-serving
18 commentary about EnzymeWorks, Dr. Tao, and their counsel. (*Id.*)

19 EnzymeWorks's and Dr. Tao's impermissible press releases have had real and adverse
20 consequences for Codexis. The company's senior management has been hearing from customers
21 who have inquired about the press releases, which contain spurious claims about the damages
22 exposure and links to articles disparaging Codexis. But Codexis's executives have been unable to
23 meaningfully respond or put EnzymeWorks's and Dr. Tao's publications into proper context, be-
24 cause Codexis is intent on complying with the Court's order limiting its statements to third parties
25 about the settlement to the single agreed-upon statement. (Nicols Decl., ¶ 4.) To name just a couple
26 examples, Codexis has received inquiries from key individuals at two of the world's largest global
27 pharmaceutical companies about EnzymeWorks's and Dr. Tao's press releases, but Codexis has
28 refrained from responding. (*Id.*, ¶¶ 5-6.) Codexis also has learned about a mass email "blast" that

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

was sent to prominent players across the pharmaceutical industry, directing the recipients to EnzymeWorks's prohibited public statements, yet still, Codexis has not responded in kind to ensure its compliance with the Court's order. (*Id.*) Codexis has thus been put at an unfair disadvantage in maintaining its goodwill and reputation, even as EnzymeWorks and Dr. Tao apparently are speaking freely to third parties about the settlement of this lawsuit, uninhibited by the Court's order. (*Id.*, ¶¶ 6-7.) As yet another obvious example of the unfair prejudice to Codexis, because of the risks to its reputation and unfair inability to respond to EnzymeWorks's and Dr. Tao's public statements, Codexis was compelled to instruct its lawyers to prepare and file this motion to enforce the Court's order. (*Id.*, ¶ 8.) And of course, Codexis is incurring the expenses and disruption of these post-settlement legal proceedings, which would have been unnecessary had EnzymeWorks and Dr. Tao simply honored the Court's order.

## III.    LEGAL STANDARDS FOR CONTEMPT

"District courts do, and must, have the authority to punish contemptuous violations of their orders." *Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995). A party that violates "a specific and definite court order by failure to take all reasonable steps within the party's power to comply," and whose noncompliance is more than *de minimis* and not the product of a reasonable interpretation of the violated order, properly faces civil contempt. *Sepehry-Fard v. Select Portfolio Servicing, Inc.*, No. 14-cv-05142-LHK, 2016 WL 4436312, at *7 (N.D. Cal. Aug. 23, 2016) (quoting *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)). A respondent's conduct need not be willful to violate a court order, and purported good faith intentions are immaterial—"[a]n act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *NLRB v. Ironworkers Local 433*, 169 F.3d 1217, 1222 (9th Cir. 1999) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)); *see also UL LLC v. Space Chariot, Inc.*, No. 2:16-cv-08172, 2017 WL 1398317, at *2 (C.D. Cal. Apr. 10, 2017) ("[T]here is 'no good faith exception to the requirement of obedience'") (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Finally, "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing

8

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

## IV. ENZYMEWORKS AND DR. TAO ARE IN CONTEMPT OF COURT.

EnzymeWorks's and Dr. Tao's violation of the order was manifest and deliberate, and the evidence is clear and convincing. The appropriate remedy for violating this order—to which they stipulated—is a finding of contempt with suitable sanctions.

### A. EnzymeWorks and Dr. Tao willfully violated the Court's order.

The Court's order authorizes EnzymeWorks and Dr. Tao to make only the agreed statement to third parties about the settlement. (Dkt. No. 185, ¶ 3.) But EnzymeWorks and Dr. Tao did not limit themselves to the approved four sentences. To the contrary, after consulting with their counsel about the concerns Codexis raised about their prior impermissible press release, and after the Court entered its order, they published a six-paragraph missive that does not remotely resemble the approved statement. Their press release editorializes on the nature of the lawsuit and their "fierce" denials of liability, grossly mischaracterizes the damage they had inflicted on Codexis, sings the praises of their business and their lawyers, and thanks their friends, customers, and counsel for "support during those difficult times." (Ex. I.) The Court's order also bars EnzymeWorks and Dr. Tao "from making any other statement or disclosure regarding the settlement of this action" aside from the agreed-upon statement. (Dkt. No. 185, ¶ 4.) Yet in addition to publishing the extraneous content described above, in the same press release they direct their readers to hyper-partisan, one-sided publications about the lawsuit and the dangers of "overreaching IP protection in the hand of ill-intentioned enzyme suppliers." (Exs. J, G.)

These publications were deliberate, made in knowing violation of a clear court order, and can only have been made in bad faith. EnzymeWorks, Dr. Tao, and their counsel knew there was but a single statement the order permitted and knew it prohibited anything else. By February 5 they knew that Codexis viewed their published statements, which significantly deviated from the agreed-upon statement, as a violation. And by February 6, when the Court issued its order—to which EnzymeWorks and Dr. Tao had stipulated—they knew that their planned press release

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

would far exceed the limits of the permissible agreed-upon statement. Yet they proceeded, essentially daring Codexis to challenge their contumacious conduct in this Court.

### B. EnzymeWorks's and Dr. Tao's violation of the Court's order was not merely technical or *de minimis*, but flagrantly defied its central purpose.

The order makes a clear admonition: the parties are limited to making a single agreed-upon statement about the settlement and are prohibited from making any other statement. (Dkt. No. 185, ¶¶ 3-4.) EnzymeWorks, Dr. Tao, and their counsel ignored this completely. This is not a mere technical or *de minimis* violation. It is a striking repudiation of both the letter and the spirit of the order. When a Court orders a party to make "only the agreed statement," it is a violation to issue a press release that selectively incorporates only *parts* of the agreed statement, buried within five other paragraphs of self-serving, biased commentary. It is even more egregious to deflect the reader, before she even reaches the selected portions of the agreed-upon statement, to two other one-sided publications about the lawsuit and purported "legal risks" in the biocatalysis industry. *Supra* at Section II.D.

EnzymeWorks, Dr. Tao, and their counsel also cannot seriously contend they are in "substantial compliance" with the Court's order when they have violated its clear prohibition on making any statement aside from the agreed-upon one to third parties. "'[S]ubstantial compliance' does not encompass serious, direct violations such as those at issue here," which negate the very purpose of the order. *Bradford Techs., Inc. v. NCV Software.com*, No. C 11-04621 EDL, 2013 WL 75772, at *7 (N.D. Cal. Jan. 4, 2013) (holding party in contempt for violating stipulated protective order) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10. F.3d 693, 695 (9th Cir. 1993)). The Court should reject any attempt by EnzymeWorks, Dr. Tao, and their counsel to spin their press releases as merely a technical or minimal violation of the order.

### C. No reasonable interpretation of the Court's order could justify EnzymeWorks's and Dr. Tao's knowing violation of it.

EnzymeWorks, Dr. Tao, and their counsel also should not be heard to argue that their violations of the Court's order should be excused because the order is not specific and definite. First, the order on its face is unambiguous. It requires adherence to "only the agreed statement" and

warns that making "any other statement" about the settlement is prohibited. It is specific, even providing the parties with the text of a clear, concise, permitted public statement. It is definite, in that it expressly instructs the parties on what statement is "permitted," that anything else is "prohibited," and warns that the order is enforceable upon a motion for contempt.

Second, EnzymeWorks, Dr. Tao, and their counsel specifically agreed to the plain, unambiguous language of the order they violated. The parties' settlement agreement was heavily negotiated and the parties agreed upon the exact form of the stipulated order they would file with the Court. (Gross Decl., ¶ 2.) EnzymeWorks, Dr. Tao, and their counsel had every opportunity to raise an issue if they saw any ambiguity in the order or if they had any problem with the "agreed statement." But they never did. (*Id.*) In fact, the negotiated language in Exhibit 1 to the Court's order reflects input from both sides. (*Id.*) The Court should dismiss any argument from EnzymeWorks, Dr. Tao, or Mr. Li that the order they helped draft is unclear.

Third, there is no interpretation of the order under which EnzymeWorks, Dr. Tao, and Mr. Li's conduct could be permissible. They may again try to argue that the order does not restrict them from saying anything they want to about the lawsuit, as long as their comments "about the settlement" adhere to the agreed-upon statement. (Ex. L.) This is not a reasonable interpretation, and the Court can quickly dispose of this argument. Only means only, and the Court ordered the parties to "make *only* the agreed statement" about the settlement. Even if EnzymeWorks and Dr. Tao had strictly adhered to the approved language, nesting it within a larger press release replete with false statements that deliberately obscure the approved language, editorializing about the lawsuit, and providing links for the reader to first view other propaganda is a clear violation of the order. It is disingenuous, to say the least, to argue that after confidentially settling a contentious lawsuit and agreeing to an order limiting both sides to making a single statement about the settlement, that one party remains free to publicly disparage the other about the claims that were just resolved, and to make public commentary about the lawsuit. EnzymeWorks's, Dr. Tao's, and Mr. Li's conduct violates the Court's order literally and does violence to its spirit and intent: to keep the parties from re-litigating in the press and before their customers the lawsuit they just resolved in this Court.

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

**V.   ENZYMEWORKS, DR. TAO, AND THEIR COUNSEL SHOULD BE HELD IN CONTEMPT, SANCTIONED, AND CODEXIS SHOULD BE FAIRLY COMPENSATED.**

Nothing Codexis could do deterred EnzymeWorks, Dr. Tao, and their counsel from violating the Court's order. Codexis raised the problem even *before* the Court's order had issued, explaining that their February 5 press release violated the settlement agreement and would be a violation of the Court's order once it was signed. Their response was to issue a second press release after the Court issued its order that only worsened the problem. The Court should now exercise its authority "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citation omitted). The Court has "broad equitable power" to do so. *FTC v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012) (quotation omitted).

First, the Court should issue an order holding EnzymeWorks and Dr. Tao in contempt for violating the Court's February 6, 2018 order.

Second, the Court should require them to immediately retract all statements they made in violation of the Court's order, and simultaneously publish through the same channels an explanation that the Court has found those public statements to be in violation of a court order and accordingly has held them in contempt—without any further commentary or editorializing by EnzymeWorks, Dr. Tao, or their counsel. EnzymeWorks and Dr. Tao know how to adjust their press releases quickly, having changed their first press release within a day of Codexis's complaints (only to replace it with their ill-advised second press release). While it may be impossible to "unring the bell," requiring an explanation that the retraction was ordered by the Court as a result of EnzymeWorks's and Dr. Tao's violation of its order is a reasonable step to take to begin to undo the reputational harm their contemptuous publications have caused Codexis. *Supra* at 7-8. To the extent the Court orders coercive and compensatory sanctions as described below, it should exercise its discretion to order EnzymeWorks to report on those sanctions as well as part of its corrective retractions.

Third, the Court should sanction EnzymeWorks, Dr. Tao, and their counsel in an amount sufficient to ensure compliance with the Court's February 6 order. "Sanctions for civil contempt

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Coercive fines, or any portion thereof, are payable to the Court rather than to the opposing party. *Id.* Given the willfulness of the violation and the apparent ineffectiveness of the Court's prior $10,000 sanctions order at encouraging compliance with future orders (Order, Dkt. No. 160 at 9), the Court should exercise its discretion to impose a coercive fine sufficient to incentivize compliance.

Fourth, the Court should award to Codexis its reasonable costs and attorneys' fees for having to pursue this contempt action. Although such an award will not compensate Codexis for the reputational harm and disruption caused by the contumacious press releases, it will at least ensure that Codexis is not financially harmed by its necessary efforts to enforce the Court's order.

## VI. CONCLUSION

EnzymeWorks, Dr. Tao, and their counsel at LiLaw, Inc. have shown an uncommon level of disrespect for the legal process and for the Court's orders throughout this case. Their conduct is part of a disturbing pattern by LiLaw and its clients "on which other courts have previously remarked" (Order, Dkt. No. 160 at 9), which has continued unabated even after the parties reached a settlement agreement that should have ended their disputes. This time, however, they violated a court order that, by stipulation, is enforceable by a motion for contempt. The only just remedy is a contempt finding and an order that they take specific corrective measures, with the appropriate coercive and compensatory sanctions as requested above.

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO

1  Dated: February 16, 2018        Respectfully Submitted,

2

3                                  By:    */s/ Gabriel S. Gross*
                                   Douglas E. Lumish (Bar No. 183863)
4                                  doug.lumish@lw.com
                                   Gabriel S. Gross (Bar No. 254672)
5                                  gabe.gross@lw.com
                                   Patricia Young (Bar No. 291265)
6                                  patricia.young@lw.com
                                   Linfong Tzeng (Bar No. 281798)
7                                  linfong.tzeng@lw.com
                                   Jie Wang (Bar No. 306395)
8                                  jie.wang@lw.com
                                   LATHAM & WATKINS LLP
9                                  140 Scott Drive
                                   Menlo Park, California 94025
10                                 Telephone: (650) 328.4600
                                   Facsimile:  (650) 463.2600

11                                 *Attorneys for Plaintiff CODEXIS, INC.*

14

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

CODEXIS'S MOTION TO HOLD ENZYMEWORKS AND TAO IN
CONTEMPT FOR VIOLATING COURT ORDER
CASE NO. 3:16-CV-00826-WHO