UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODEXIS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ENZYMEWORKS, INC., et al.,<br><br>　　　　Defendants. | Case No. 3:16-cv-00826-WHO<br><br>**ORDER FINDING DEFENDANTS IN CONTEMPT AND AWARDING PLAINTIFF COMPENSATORY SANCTIONS**<br><br>Re: Dkt. No. 190 |

**INTRODUCTION**

After two years of contentious litigation, the parties entered into a confidential settlement that included a consent judgment of patent infringement, a stipulated permanent injunction, and a stipulated protective order ("SPO") limiting the parties' comments on the settlement to an agreed upon statement. Less than two weeks later, plaintiff Codexis, Inc. ("Codexis") filed this motion to hold defendants EnzymeWorks, Inc. (U.S.) and EnzymeWorks, Inc. (China) a/k/a Suzhou Hanmei Biotechnology Co. Ltd d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks") and Junhua Tao in contempt for violating the SPO because defendants issued press releases that did not use the agreed upon statement and that spun the litigation and parties in a way that the SPO was designed to avoid. Because defendants did not take "every reasonable step" to comply with the SPO, I find them in contempt. In addition to retracting the press releases, they are ordered to compensate Codexis's counsel for reasonable fees and costs associated in seeking defendants' compliance with the SPO.

# BACKGROUND[1]

Codexis is a California biotechnology company that engineers customized enzymes called "biocatalysts." On February 19, 2016, it filed this action against Junhao Tao and his companies (EnzymeWorks), alleging that Tao, a former trusted partner, took proprietary information from Codexis, including information about its enzymes, corresponding DNA and amino acid sequences, protein engineering and manufacturing processes. Compl. ¶ 15 (Dkt. No. 1). It brought claims for patent infringement of ten patents, trade secret misappropriation, breach of confidence, intentional interference with contractual relations, intentional interference with prospective economic relations, statutory unfair competition, and common law unfair competition. *See generally* Compl.

On April 29, 2016, Codexis filed a first amended complaint (Dkt. No. 32), and two weeks later, defendants moved to dismiss the state law claims and Codexis's alter ego and agency theories of liability (Dkt. No. 34). I granted the motion in part, dismissing Codexis's UCL claim under the unfairness prong, and its agency theory of liability. Order Granting In Part and Denying In Part Mot. to Dismiss (Dkt. No. 57). I denied the motion in all other respects. *Id*.

Defendants elected not to contest infringement of the asserted patents. Defs.' Answer to First Am. Compl. (Dkt. No. 62); Further Joint Case Management St. (Dkt. No. 80). On July 31, 2017, the parties filed a stipulation of partial summary judgment for the patent infringement claims. Stipulation (Dkt. No. 101); Order (Dkt. No. 102).[2]

On August, 11, 2017, Codexis sought leave to amend its complaint to add claims for violation of California's Uniform Voidable Transfer Act and common law fraudulent transfer against Tao and his son, Andrew Tao, based on information it had discovered during an "independent investigation" of its underlying claims. Dkt. No. 103. On September 25, 2017, I

---

[1] I include only relevant background facts, with a more thorough recitation of the procedural history to provide context for resolution of this motion. For a full recitation of the background, see the order granting Codexis leave to amend its complaint. Dkt. No. 127. In its opposition to this motion, EnzymeWorks devotes a significant amount of the background to reciting facts irrelevant to the disposition of this motion, none of which are repeated here. *See* Opp'n to Mot. to Hold EnzymeWorks and Tao in Contempt at 2–6 (Dkt. No. 194).

[2] LiLaw, Inc., present counsel for defendants, replaced defendants' former counsel on May 22, 2017. Dkt. Nos. 82, 83.

1  granted its request, Order Granting Leave to Amend (Dkt. No. 127), and on September 28, 2017,
2  Codexis filed its second amended complaint adding these new claims. Second Am. Compl. (Dkt.
3  No. 129).

4  Two days after I issued the order granting Codexis leave to file an amended complaint,
5  LiLaw filed a motion for leave to file a motion for reconsideration of that order, Dkt. No. 128,
6  without asserting any new facts or change of law. While that motion was pending, only 12 days
7  later, LiLaw repeated that argument in a motion to dismiss the newly added claims, Dkt. No. 137.
8  By this time, I had received a cascade of discovery disputes since LiLaw, Inc. had entered the
9  case, including: Discovery Letter Brief *Joint Statement Re: Deposition Travel Costs* (Dkt. No.
10 93); Statement *re: Discovery of Defendants' Assets* (Dkt. No. 94); Discovery Letter Brief *Joint
11 Statement Re: ENZYMEWORKS MOTION TO COMPEL DISCOVERY* (Dkt. No. 111); Joint
12 Discovery Letter Brief *re: Codexis's Request for Additional Time to Complete the Deposition of
13 30(b)(6) Witness and Individual Defendant Junha "Alex"* (Dkt. No. 112); Joint Discovery Letter
14 Brief*(First) Statement re: Issues in Defendants' Discovery Regarding Use of Codexis's Trade
15 Secrets* (Dkt. No. 113); Joint Discovery Letter Brief*(Second) Statement re: Issues in Defendants'
16 Electronic Discovery* (Dkt. No. 114); Joint Discovery Letter Brief*(Third) Statement re: Issues in
17 Defendants' Financial and Alter Ego Discovery* (Dkt. No. 115); Joint Discovery Letter
18 Brief*(Fourth) Statement re: Issues in Defendants' Responses to Contention Interrogatories* (Dkt.
19 No. 116); Mot. to Strike Strem Deposition (Dkt. No. 117); Mot. for Disclosure *of Confidential
20 Information to Expert Witness* filed by defendants (Dkt. No. 134); Mot. for Disclosure *of
21 Confidential Information to Expert Witness* filed by Codexis, Inc. (Dkt. No. 143); Statement *by
22 Plaintiff Codexis, Inc.re: Defendants' Violation of Court Order on Discovery Disputes* (Dkt. No.
23 150). I issued numerous orders on those disputes. Dkt. Nos. 79, 96, 118, 151, 160.

24 I denied the motion to reconsider and sanctioned LiLaw in the amount of $10,000 for
25 needlessly multiplying this litigation by presenting the same arguments for the third time. Order
26 on Motions (Dkt. No. 160). I specifically noted that:
27 > The manner of litigation that I have witnessed since LiLaw's appearance in this matter—and on which other courts have

> previously remarked[3]—greatly disturbs me. This sanction is undoubtedly far less than what plaintiff's counsel would have sought if I allowed full compensation for reasonable attorney's fees in opposing the motion. But this should serve as a warning to the lawyers in this case, particularly at LiLaw, that my patience with the nitpicking, formalistic, overly aggressive manner that has characterized the discovery process is at an end.

*Id.* at 9–10.

On February 5, 2018, the parties notified the court that they had agreed to settlement of the claims between them.[4] Dkt. No. 181. They filed a stipulated judgment of patent infringement (Dkt. No. 181), a stipulated permanent injunction (Dkt. No. 182), and the SPO (Dkt. No. 183). The following day, I issued orders granting the stipulations. Dkt. Nos. 184, 185, 186. Defendants also filed an unopposed motion to vacate the sanctions award in the December 4, 2017 Order on Motions. Defs.' Unopposed Mot. to Vacate ECF 160 Sanction Order (Dkt. No. 179).

The SPO provides, in part, that "[t]he parties may make only the agreed statement, attached as Exhibit 1, to any third party concerning the settlement of the above-captioned action. The parties are prohibited from making any other statement or disclosure regarding the settlement of this action to any third party." Stipulated Protective Order ¶ 3 (Dkt. No. 185). It also explicitly states that the order "shall be enforceable by motion including, without limitation, a motion for contempt." *Id.* ¶ 4. The parties agreed statement follows:

> Codexis, Inc. ("Codexis") and EnzymeWorks, Inc. (U.S.), Suzhou Hanmei Biotechnology Co. Ltd, d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks"), Junhua Tao, and Andrew Tao have reached a settlement concerning the lawsuit filed by Codexis against EnzymeWorks, Junhua Tao, and Andrew Tao in the United States

---

[3] *E.g.*, *Raymat Materials, Inc. v. A&C Catalysts, Inc.*, No. 13-00567-WHA, Dkt. No. 110 (N.D. Cal. May 8, 2014)(granting attorneys' fees to party opposing civil contempt motion filed by LiLaw, Inc. because it "was a frivolous motion and reasonable attorney's fees are justified" and it was "not the first time counsel for Raymat has taken an unreasonable position… ."); *Dynetix Design Sols. Inc. v. Synopsys Inc.*, No. 11-05973-PSG, Dkt. No. 450 (N.D. Cal. July 11, 2013)(denying motion for sanctions filed by LiLaw, Inc. and noting that it failed to comply with the local rules); *Peake Performance Nutrition v. Mediapower, Inc.*, No. 09-4933-AG (C.D. Cal. June 7, 2010) (denying motion for sanctions filed by LiLaw, Inc., and reminding the parties, "While litigation is by its nature contentious, no circumstances justify abandoning professionalism and civility that help make the legal profession a noble pursuit."); *EnReach Tech., Inc. v. Embedded Internet Sols., Inc.*, No. 04-1255-CW, Dkt. No. 266 (N.D. Cal. Aug. 31, 2005)(denying motion for sanctions filed by LiLaw because there was "no basis").

[4] The parties reached the confidential settlement on February 1, 2018. Stipulated Protective Order ¶ 1.

> District Court for the Northern District of California. The parties have entered into a settlement agreement, the terms of which are confidential. The parties have also stipulated to a judgment of patent infringement of all asserted patents against EnzymeWorks, and a permanent injunction barring any future infringement. The remaining claims against EnzymeWorks, and all claims against Junhua Tao, and Andrew Tao including trade secret misappropriation, breach of contract and voidable transfer have been dismissed with prejudice.

Stipulated Protective Order, Ex. 1 (Dkt. No. 183 at 5).

Less than two weeks later, Codexis filed a motion to hold EnzymeWorks and Tao in contempt for violating the SPO. Mot. to Hold EnzymeWorks and Tao in Contempt for Violating Court Order ("Mot.")(Dkt. No. 190). On February 5, 2018, EnzymeWorks and Tao had issued a press release entitled "EnzymeWorks, Inc. and Codexis, Inc. Reach a Settlement Agreement." 2/5/18 Press Release (Gross Decl. ¶ 5; *id.*, Ex. B; Dkt. No. 189-2). Rather than using the agreed statement, the release spins the settlement in a way more favoarable to defendants:

> After nearly two years of litigation, EnzymeWorks, Inc. and Codexis, Inc. have decided to reach a settlement agreement.
>
> All claims against EnzymeWorks' founder Alex Tao have been dismissed with prejudice. Claims against EnzymeWorks including trade secret misappropriation and breach of contract have been dismissed with prejudice. As for patent infringement, both parties have stipulated to a judgment. For details please see https://www.businesswire.com/news/home/20170811005520/en/EnzymeWorks-Dr.-Alex-Tao-Respond-Press-Release.
> Biocatalysis is a relatively new field, and some guidelines are coming up to minimize legal risks and make the technology more attractive for chemical production. Learn more at http://www.enzymeworking.com/index.php?_m-mod_article&_a=article_content&article_id=260.
>
> We greatly appreciate our friends and customers' trust and support during those difficult times, and especially than our legal counsel J. James Li and his team at LiLaw Inc. for their professional services, deep experience and dedication.
>
> With the case behind, EnzymeWorks and Alex Tao will continue to improve the biocatalysis technology making it more efficient for green chemical manufacturing. EnzymeWorks develops its own enzymes and processes via retrosynthetic integration with chemical transformations, and is always committed to taking responsibility for IP.

2/5/18 Press Release.

Codexis's counsel immediately emailed defense counsel to express their "dismay[]" that

defendants were "already violating the settlement agreement, mere days after signing it." 2/5/18 2:21 PM Email from Gross to Li (Gross Decl. ¶ 6; *id.*, Ex. C; Dkt. No. 189-3). Codexis's counsel indicated that the press release violates the settlement agreement by deviating from the agreed upon statement, and makes "demonstrably false statements," including that the claims against defendants had been dismissed.[5] *Id.* It requested defendants to immediately retract the press release, while reserving its right to "seek sanctions, contempt findings, and any other available remedies, and to bring additional claims arising from [defendants'] unfortunate conduct." *Id.*

Defense counsel responded that he "thought they just wanted to get it done before they break for Chinese New Year[,]" and indicated that the statements were "not substantively different from the approved agreement[.]"[6] 2/5/18 3:00 PM Email from Li to Gross (Gross Decl. ¶ 7; *id.*, Ex. D; Dkt. No. 189-4). But, he agreed that it was "a little premature to use the words 'have been dismissed'" since the claims had yet to be dismissed. *Id.*; *see also* Li Decl. ¶ 3. Codexis's counsel disagreed with defense counsel's proposal to address the situation and his characterization of the press release as merely an issue of "timing." 2/5/18 3:45 PM Email from Gross to Li (Gross Decl. ¶ 8; *id.*, Ex. E, Dkt. No. 189-5). Defense counsel reiterated his position, but indicated that he would "ask the client to withdraw the press release." 2/5/18 4:04 PM Email from Li to Gross

---

[5] Codexis points out several "problems" with the press release, including:

> (1) violates the parties' stipulation (and soon-to-issue court order) by deviating significantly from the "agreed statement"; (2) directs the reader via a hyperlink to a self-serving press release EnzymeWorks and Dr. Tao had issued attacking and threatening legal claims against Codexis and its CEO, and putting its own biased spin on the admission of infringement; (3) tells the reader that "some guidelines are coming up to minimize legal risks" in the biocatalysis industry, with a link to another self-serving article authored by Dr. Tao; (4) contains a self-laudatory description of EnzymeWorks, including that it purportedly is a "world leader" in the field; (5) contains material false statements, like "EnzymeWorks develops its own enzymes and processes via retrosynthetic integration with chemical transformation, and is always committed to taking responsibility for IP," "All claims against EnzymeWorks' founder Alex Tao have been dismissed with prejudice," and "Claims against EnzymeWorks including trade secret misappropriation and breach of contract have been dismissed with prejudice," none of which has happened yet.

Mot. at 5–6.

[6] Counsel also spoke on the phone. Gross Decl. ¶ 3.

6

(Gross Decl. ¶ 9; *id.*, Ex. F, Dkt. No. 189-6); *see also* Li Decl. ¶ 3.

The next day, EnzymeWorks issued another press release, entitled "CORRECTING and REPLACING EnzymeWorks, Inc. Resumes Focus on Biocatalysis." 2/6/18 Press Release (Gross Decl. ¶ 12; *id.*, Ex. I, Dkt. No. 189-9; Li Decl. ¶ 19; *id.*, Ex. D, Dkt. No. 194-1 at 33). This version was approved by defense counsel, Li Decl. ¶ 5, who emailed Codexis's counsel advising that "the press release issued yesterday was withdrawn" and "a new press release [was] issued to correct the previous one[.]" 2/6/18 3:45 PM Email from Li to Gross (Gross Decl. ¶ 11; *id.*, Ex. H; Dkt. No. 189-8); *see also* Li Decl. ¶ 6. The "corrected" press release corrects little:

> In 2016, Codexis, Inc. ("Codexis") sued EnzymeWorks, Inc. (U.S.), Suzhou Hanmei Biotechnology Co. Ltd, d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks") and EnzymeWorks founder Dr. Junhua "Alex" Tao in the United States District Court for the Northern District of California (the "Codexis Lawsuit") for various claims. From the very beginning, EnzymeWorks decided not to oppose the patent infringement claims because of the limited exposure, but fiercely denied any other liabilities throughout the case. (See https://www.businesswire.com/news/home/20170811005520/en/EnzymeWorks-Dr.-Alex-Tao-Respond-Press-Release).
>
> The Codexis Lawsuit is regarding biocatalysis technology, which is a relatively new field. Some guidelines are emerging to minimize legal risks and make the technology more attractive for chemical production: http://www.enzymeworking.com/index.php?_m-mod_article&_a=article_content&article_id=260.
>
> After two years of litigation, the Codexis lawsuit is drawing to a closure. The parties of the lawsuit have entered into a settlement agreement, the terms of which are confidential. The parties have also stipulated to a judgment of patent infringement of all asserted patents against EnzymeWorks, and a permanent injunction barring any future infringement. The remaining claims against EnzymeWorks, and all claims against Junhua Tao, and Andrew Tao including trade secrete misappropriation, breach of contract and voidable transfer are set to be dismissed with prejudice.
>
> We greatly appreciate our friends and customers' trust and support during those difficult times, and especially thank our legal counsel J James Li, PhD. and his team at LiLaw Inc. for their professional services, deep experience and dedication.
>
> With the case behind, EnzymeWorks and Alex Tao will continue to improve the biocatalysis technology making it more efficient for green chemical manufacturing. EnzymeWorks develops its own enzymes and processes via retrosynthetic integration with chemical transformations, and is always committed to taking responsibility for IP.

> About EnzymeWorks, Inc.: EnzymeWorks is a world leader in applying biosynthesis and green chemistry as its core technologies for contract research and manufacturing services. Its research team has contributed to over 20 books, filed over 100 patents and received numerous honors and awards in the field of biocatalysis and biomanufacturing. We also supply over a dozen cofactors including NAD, NADP, NADH, NADPH, NR, NMN, UDP glucose, and UDP glucuronic acid at large scale. Learn more at www.enzymeworking.com.
>
> About LiLaw Inc: LiLaw Inc. is an intellectual property, business litigation and employment law firm based in CA, USA. Learn more at www.lilaw.us.
>
> Contacts
> Press Contact:
> EnzymeWorks, Inc.
> Ling Zhu
> +86 512 8883 8789
> services@enzymeworking.com

2/6/18 Press Release.

Codexis's counsel again contacted defense counsel to express its view that the "corrected" press release "does not resolve the issue" and "is a clear violation of the protective order … issued today." 2/6/18 4:00 PM Email from Gross to Li (Gross Decl. ¶ 14, *id.*, Ex. K, Dkt. No. 189-11). Defense counsel again "disagree[d]." 2/6/18 4:33 PM Email from Li to Gross (Gross Decl. ¶ 15, *id.*, Ex. L, Dkt. No. 189-12; Li Decl. ¶ 6, *id.*, Ex. E, Dkt. No. 194-1 at 36). He indicated that "[t]he press release is not just about the settlement, but about the general topic of the company refocusing on its core business." *Id.*

A link to the press release appears on the "news" frame of EnzymeWorks's website, and clicking it leads to a new version entitled "EnzymeWorks Resumes Focus on Biocatalysis," dated February 7. 2/7/18 Press Release (Gross Decl. ¶ 16; *id.*, Ex. M, Dkt. No. 189-13). This version states:

> In 2016, Codexis, Inc. ("Codexis") sued EnzymeWorks, Inc. (U.S.), Suzhou Hanmei Biotechnology Co. Ltd, d/b/a EnzymeWorks, Inc. (China) (collectively, "EnzymeWorks") and EnzymeWorks founder Dr. Junhua "Alex" Tao in the United Stated District Court for the Northern District of California (the "Codexis Lawsuit") for various claims. From the very beginning, EnzymeWorks decided not to oppose the patent infringement claims because of the limited exposure, but fiercely denied any other liabilities throughout the case. See https://www.businesswire.com/news/home/20170811005520/en/EnzymeWorks-Dr.-Alex-Tao-Respond-Press-Release. The Codexis

> Lawsuit is regarding biocatalysis technology, which is a relatively new field. Some guidelines are emerging to minimize legal risks and make the technology more attractive for chemical production: http://www.enzymeworking.com/index.php?_m=mod_article&_a=article_content&article_id=260. After two years of litigation, the Codexis lawsuit is drawing to a closure. The parties of the lawsuit have entered into a settlement agreement, the terms of which are confidential. The parties have also stipulated to a judgment of patent infringement of all asserted patents against EnzymeWorks, and a permanent injunction barring any future infringement. The remaining claims against EnzymeWorks, and all claims against Junhua Tao, and Andrew Tao including trade secret misappropriation, breach of contract and voidable transfer are set to be dismissed with prejudice. We greatly appreciate our friends and customers' trust and support during those difficult times, and especially thank our legal counsel James Li and his team in LiLaw Inc. for their professional services, deep experience and dedication. With the case behind, EnzymeWorks and Alex Tao will continue to improve the biocatalysis technology making it more efficient for green chemical manufacturing. EnzymeWorks develop its own enzymes and processes via retrosynthetic integration with chemical transformations, and always commit to take responsibility for IP.
>
> About EnzymeWorks, Inc.: EnzymeWorks is a world leader in applying biosynthesis and green chemistry as its core technologies for contract research and manufacturing services. Its research team has contributed to over 20 books, filed over 100 patents and received numerous honors and awards in the field of biocatalysis and biomanufacturing. We also supply over a dozen cofactors including NAD, NADP, NADH, NADPH, NR, NMN, UDP glucose, and UDP glucuronic acid at large scale. Learn more at www.enzymeworking.com.
>
> About LiLaw Inc: LiLaw Inc. is an intellectual property, business litigation and employment law firm based in CA, USA. Learn more at www.lilaw.us.
>
> Contacts
> Press Contact:
> Ling Zhu
> +86 512 8883 8789
> services@enzymeworking.com

2/7/18 Press Release.

Codexis indicates that "its reputation and good will in the industry have been adversely affected" by defendants' press releases. Nicols Decl. ¶ 5 (Dkt. No. 190-2). It specifies that it has received inquiries about the press releases from two individuals at two of the world's largest pharmaceutical companies, but has refrained from "meaningfully respond[ing]" given the court order. *Id.* ¶¶ 4–6. It also learned about a mass email "blast" sent to key individuals in the

1 pharmaceutical industry, directing them to EnzymeWorks's press releases. *Id*. ¶ 6.

2 On February 20, 2018, Codexis filed this motion. Mot. (Dkt. No. 190).

**LEGAL STANDARD**

A district court has the statutory authority to punish "contempt of its authority," including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994)("Courts thus have embraced an inherent contempt authority… ."); *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995)("District courts do, and must, have the authority to punish contemptuous violations of their orders.").

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply[,]" and "[t]he contempt need not be willful[.]" *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)(internal quotation marks and citations omitted). But "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id*. (internal quotation marks omitted). On the other hand, "[a]n act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). "Compensatory awards are limited to 'actual losses *sustained as a result of the contumacy.*'" *Id*. (emphasis in original). And, "[i]f the fine, or any portion of the fine, is coercive, it should be payable to the court[.]" *Id*.

**DISCUSSION**

**I.      CONTEMPT**

Codexis argues that EnzymeWorks's press releases "can only have been made in bad faith" because they were deliberately published in knowing violation of a clear court order. Mot. at 9. EnzymeWorks counters that its press releases reflected mere "style changes" that did not "alter the

substances of the approved statement[,]" therefore, "there was not even technical violation under the rule of good faith and reasonable interpretation." Opp'n at 1 (Dkt. No. 194). It also urges that there is no "express provision prohibiting discussing the settlement agreement within the context of the broader subject matter… ." *Id*. In the event that I consider the press release a civil contempt, EnzymeWorks asks for an order to impose civil contempt on Codexis because "it spends several pages talking about how strong its case was before the settlement, intending to fuel the public speculation as to the contents of the settlement agreement." *Id*. at 2.

EnzymeWorks distills the basis for Codexis's motion down to two issues: "(1) paragraph 2 of the Press Release was not verbatim of the approved statement; and (2) there are other paragraphs in the same Press Release seems to suggest [sic] that EnzymeWorks has settled the case in [sic] favorable terms." Opp'n at 11. Concerning the first point, if the Press Release had been limited to minor deviations from the agreed statement, then EnzymeWorks's conduct *might* be viewed as a "reasonable" attempt to comply with the SPO. I pause to note, however, that even that characterization stretches what constitutes reasonable considering EnzymeWorks could and *should* have repeated the statement verbatim, with the solitary tense change to reflect the fact that the remaining claims had yet to be dismissed. That is what the parties bargained for, and made enforceable through the SPO. Defendants did not "take all reasonable steps within [its] power to comply" with the clear and unambiguous language of the SPO. *See Reno Air Racing*, 452 F.3d at 1130.

But EnzymeWorks did not limit itself to relatively minor changes between the agreed statement and paragraph 2 of its Press Release. Rather, it provided its spin on the "broader context" of the litigation and eventual settlement. EnzymeWorks insists that there is no express provision barring statements discussing the settlement agreement in a broader context. Opp'n at 13. It breaks the Press Release into four paragraphs—the first describes the lawsuit in general, the second discusses the settlement, substantively conforming to the agreed statement, the third thanks customers and friends, and the fourth announces its plan to continue improving biocatalysis. *Id*. at 15. It contends that the Press Release did not disclose any *details of the settlement*, other than what was contained in the agreed statement. *See* Opp'n at 13 ("The purpose of the Order is to

11

prevent the Parties from disclosing the terms of the settlement agreement."); *id.* at 14 ("There is no violation of Section 3 under any good faith and reasonable interpretation of the section… ."); *id.* at 15 ("The style changes discussed above in Paragraph 2 do not in any way convey additional information as to the contents or terms of the settlement agreement."); *id.* at 17 ("The public has not learned anything from the Press Release about the settlement agreement which is not part of the approved statement."). In its perspective, it complied with the SPO.

But this argument is emblematic of the "formalistic" manner that permeates defense counsel's litigation style. *See* Order on Motions at 9–10 ("But this should serve as a warning to the lawyers in this case, particularly at LiLaw, that my patience with the nitpicking, formalistic, overly aggressive manner that has characterized the discovery process is at an end.")(Dkt. No. 160). The SPO unequivocally provides that "[t]he parties may make *only* the agreed statement, attached as Exhibit 1, to any third party concerning the settlement of the above-captioned action." SPO ¶ 3 (emphasis added). It further indicates that "[t]he parties are prohibited from making *any other statement* or disclosure regarding the settlement of this action to any third party." *Id.* (emphasis added). EnzymeWorks did not have the discretion to deviate from the statement.

Of course each press release must be viewed as a whole. A reasonable interpretation of the clear edict that "[t]he parties are prohibited from making *any other statement* … regarding the settlement" would prevent the parties from making any other statement *on the subject of* the settlement. Even under EnzymeWorks's own interpretation of the paragraphs of the Press Release, *see* Opp'n at 15, each broadly concerns the settlement because it is related to the lawsuit in general. The first paragraph references EnzymeWorks's "limited exposure" on the patent infringement claims and "fierce[] deni[al] [of] any other liabilities… ." And it directs the reader to a previous press release discussing its negative perspective of Codexis's claims. The second paragraph discusses biocatalysis, the subject of the lawsuit (and, necessarily, the settlement), and points the reader to "some guidelines … to minimize legal risks… ." The third paragraph begins with a transitional sentence linking the litigation to the settlement, and then uses part of the agreed statement to describe the settlement, with the necessary tense change. The fourth paragraph thanks friends, customers, and LiLaw, and concludes with a "commit[ment] to take responsibility

12

1 for IP."

EnzymeWorks's interpretation of the SPO would have me distinguish statements *regarding the litigation* from statements *concerning the settlement,* and ignore the references to the previous press releases. Dr. Tao admitted that "[w]e referenced the two previously published articles in the Press Release *to describe the legal entanglement that had been distracting us from our business for the past two years*." Tao Decl. ¶ 6 (Dkt. No. 194-2). This approach does not comply with the SPO. *See, e.g.*, *Bradford Techs., Inc. v. NCV Software.com*, No. C 11-04621 EDL, 2013 WL 75772, at *7 (N.D. Cal. Jan. 4, 2013)("There is no 'substantial compliance' when an SPO is directly violated."). There is no reasonable way to read the press releases and not conclude that defendants tried to spin the settlement for their benefit, despite having agreed to something very different in the SPO. Defendants EnzymeWorks and Tao are held in CONTEMPT OF COURT for their deliberate violations of the SPO.[7]

## II. SANCTIONS

Codexis contends that EnzymeWorks should be required to retract all statements made in violation of the court order, and publish a new press release explaining that the court has found it in contempt for making the previous statements in violation of the court order. Mot. at 12. Codexis insists that this explanation "is a reasonable step to take to begin to undo the reputational harm… ." Mot. at 12. It also seeks a coercive sanction to ensure compliance with future orders, and a compensatory sanction to reimburse Codexis its reasonable costs and attorneys' fees in pursuing this contempt action. *Id*. at 13.

I will not issue a coercive sanction in this matter. Defendants shall strictly comply with this court order. I award Codexis's counsel the full amount of its reasonable attorneys' fees and costs incurred in connection with these contempt proceedings and with their efforts to secure defendants' compliance with the SPO. In the event the parties do not reach agreement within ten days of this Order, Codexis may file an accounting of its recoverable fees and costs with a motion

---

[7] Defendants' contention that Codexis violated the SPO by saying more than the agreed statement in its Motion for Contempt is preposterous. The SPO explicitly provided that it "shall be enforceable by motion including, without limitation, a motion for contempt." SPO ¶ 4.

13

for payment of said fees and costs. If the Court grants such a motion, it may include an award of the fees necessary to compensate Codexis for its additional fees and costs for bringing the fees motion.

**CONCLUSION**

In addition to the award of fees described above, EnzymeWorks and Tao are hereby ORDERED to take all reasonable steps within five days of this Order to retract the 2/7/18 Press Release and all statements containing content that is substantially similar to that Press Release, using the exact same channels for the retraction through which the Press Release was originally published or distributed. It is FURTHER ORDERED that in the same retraction, they shall simultaneously publish to all recipients of the Press Release the following statement: "EnzymeWorks has been ordered by the United States District Court for the Northern District of California to retract its prior statements and press releases pertaining in any way to the settlement of the lawsuit filed against it by Codexis, Inc. The Court has found EnzymeWorks's prior statements on the matter were made IN VIOLATION OF A COURT ORDER, and the Court has found EnzymeWorks and its founder Junhua "Alex" Tao IN CONTEMPT OF COURT as a result of those prior statements." EnzymeWorks, Dr. Tao, and their counsel are not to say anything else in the retractions.

**IT IS SO ORDERED.**

Dated: March 29, 2018

William H. Orrick
United States District Judge

14